**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RICHARD BUCHHOLZ,<br><br>Plaintiff,<br><br>v.<br><br>VICTOR PRINTING, INC., and LEONARD VICTOR<br><br>Defendants. | CIVIL NO. 10-6406(NLH)(AMD)<br><br>**OPINION** |

**APPEARANCES:**

PAUL CALVIN LANTIS
ARI R. KARPF
CHRISTINE ELAINE BURKE
KARPF, KARPF & CERUTTI, P.C.
3331 STREET ROAD, SUITE 128
TWO GREENWOOD SQUARE
BENSALEM, PA 19020
*On behalf of plaintiff*

FERNANDO M. PINGUELO
NORRIS MCLAUGHLIN & MARCUS, PA
721 ROUTE 202-206
PO BOX 1018
SOMERVILLE, NJ 08876-1018
and
JACLYN KATE RUOCCO
MATTHEW V. DELDUCA
PEPPER HAMILTON LLP
301 CARNEGIE CENTER
SUITE 400
PRINCETON, NJ 08543
*On behalf of defendants*

**HILLMAN**, District Judge

Plaintiff filed a complaint alleging that defendants discriminated against him on the basis of age in violation of the New Jersey Law Against Discrimination. Before the Court is defendants' motion for summary judgment. For the reasons set forth

below, defendant's motion will be denied.[1]

## I. BACKGROUND

Plaintiff, Richard Buchholz, began working for defendants in June 1986. His employment ended on October 16, 2009. Defendant Victor Printing, Inc. ("Victor Printing") is a small, family-run printing shop in Cherry Hill, New Jersey founded in 1972. Defendant Leonard Victor is the owner and president of Victor Printing.

Plaintiff was hired to work as a pressman, operating the AB Dick, a two-color press or duplicator. In 1991, he became a small press foreman. Over the years, Victor Printing acquired more sophisticated multi-colored press machines and began phasing out work on the AB Dick two-color press. Although other operators chose to be trained on the more sophisticated equipment, plaintiff chose not to. Eventually, there was less work on the AB Dick machine and plaintiff's hours were reduced in 2006 to three days a week. Defendants then offered plaintiff a job as a full-time driver which plaintiff accepted. Plaintiff was 63 years old at that time.

As an accommodation to plaintiff, defendants did not reduce plaintiff's rate of pay when he became a driver which

---

[1] Defendants also filed an unopposed motion for leave to file an over-length reply brief. Defendants reply brief is 16 pages, one page over the 15 page limit. Pursuant to Local Rule 7.2(b), the Court will grant defendants' motion.

remained at $17.50 per hour. This rate of pay was higher than plaintiff's second job as a driver for TD Bank at $11.00 per hour. The van that plaintiff drove for defendants displayed the Victor Printing name and phone number. In late 2008, Victor Printing's sales declined 25 to 30 percent. As a result, in December 2008 and January 2009, Victor Printing laid off eight employees. Plaintiff, who was 65 years old at the time, was not laid off.

In the four or five month period before he was terminated, defendants received complaints about plaintiff's driving. The first involved plaintiff getting out of the van to confront a driver who had his son in the car. Plaintiff states the driver wanted to get in front of him at a stop light. The driver called Victor Printing to complain. Victor, who took the call, described the driver as "irate" and "very upset." Plaintiff admits to getting out of the car to see if the van was hit and confronting the driver as to his driving. Victor warned plaintiff that he was driving a "billboard" for Victor Printing.

The second instance occurred when plaintiff, while attempting to exit the Turnpike, pulled in front of a tractor trailer. The driver of the tractor trailer called to complain that plaintiff cut him off so that he had to lock his brakes and almost caused an accident. Plaintiff was directed by defendants to call the driver and apologize, which he did.

Defendants also had discussions with plaintiff about his

appearance. Plaintiff admits that he cut his uniform shirt around the collar and in front of the shirt, but that he stopped wearing cut shirts after it was brought to his attention.[2] Plaintiff also states that defendants did not maintain a formal discipline policy and only issued verbal warnings to employees.

Within weeks of plaintiff's termination, defendants received a complaint from a customer that plaintiff had acted inappropriately by complaining to the customer about Victor Printing. Plaintiff states that he told the customer that the boxes were heavy and that Victor Printing did not send someone to help him. Defendants, however, did not inform plaintiff of the call.

On October 15, 2009, the day before plaintiff was let go, plaintiff hit a parked truck belonging to a large client of defendants', Edmunds Direct Mail ("Edmunds"), while on a delivery. Plaintiff states that he heard a noise while backing in, got out to look and saw that a mirror on the truck had moved but observed no other damage. The accident damaged the Edmunds truck and left scratches on the defendants' van. Plaintiff did not report the accident to either Edmunds or the defendants.

The following day, plaintiff returned to Edmunds for a

[2] Defendants also allege that plaintiff was disciplined many times for his "attitude" and used profanity toward Bob Gullo, Production Manager for Victor Printing. Plaintiff specifically denies these statements.

delivery and was confronted by one of Edmunds's employees about the damage to the truck. Plaintiff had hit one of the truck's mirrors breaking an amber lens. Although plaintiff knew he was required to report an accident or damage to equipment, plaintiff maintains that he did not report it because he did not believe there was any damage done. Defendants learned about the accident after an Edmunds employee had called and notified them. Defendants state that Edmunds was upset that no one from Victor Printing had called to discuss the accident.[3]

On October 16, 2009, plaintiff was confronted about the incident involving the Edmunds truck and admitted that he failed to report the accident with the Edmunds truck. What else happened in the meeting appears to be in dispute. Plaintiff maintains that Victor told him that he was being laid off because there was not enough work for him to do and that if work increased, he could come back for three days a week and work at a lower rate of pay. Defendants maintain that plaintiff was fired because of his poor driving and that plaintiff was described as "laid off" as an accommodation so that plaintiff could inform other employers he was

[3] Although plaintiff denies that Edmunds was upset, he cites no evidence that could show Edmunds was not upset. Also, plaintiff argues that since he spoke Edmunds employees the day after the accident, defendants' statement that no one from Victor Printing called about the accident is not accurate. Plaintiff's argument in unavailing. Plaintiff being confronted by an employee at Edmunds for breaking a lens on their truck is not akin to having an officer of the company call to acknowledge the accident.

laid off and could collect unemployment compensation.

After the October 16th meeting, three of defendants' current employees took over the duties of driver until a replacement could be hired. In April 2010, defendants hired a replacement driver who was 22 years old.

Plaintiff argues that defendants discriminated against him on the basis of age. He states that in the weeks before he was laid-off, he was asked by Victor on two separate occasions about his retirement plans - once approximately two weeks before he was laid-off, and once on October 8, 2009, approximately one week before he was laid-off. Defendants state that the inquiries regarding plaintiff's retirement were in response to certain events. Specifically, in September 2009, plaintiff switched his medical coverage under the Victor Printing medical plan to the TD Bank medical plan. On October 8, 2009, plaintiff completed a 401(k) withdrawal request to withdraw 100 percent of his account. Around this time, defendants also learned that plaintiff would begin collecting social security in October 2009.

On December 10, 2010, plaintiff filed a complaint alleging that defendants violated the New Jersey Law Against Discrimination. Defendants now move for summary judgment seeking to dismiss plaintiff's claim.

**II. JURISDICTION**

This Court exercises subject matter jurisdiction pursuant

to 28 U.S.C. § 1332 (diversity). Plaintiff is a citizen of Pennsylvania. Defendant Victor Printing, Inc. is a New Jersey corporation with its principal place of business in New Jersey. Defendant Leonard Victor is a citizen of New Jersey. Plaintiff alleges that the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his

favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**B. New Jersey Law Against Discrimination**

Plaintiff alleges that defendants violated the New Jersey Law Against Discrimination ("NJLAD") when they terminated his employment due to age. The NJLAD prohibits employers from discharging an individual from employment because of the individual's age. See N.J.S.A. § 10:5-12(a).[4] In cases alleging

[4] N.J.S.A. § 10:5-12(a) states, in relevant part:

> It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination ... [f]or an

age discrimination under the NJLAD, "an employee must 'show that the prohibited consideration[, age,] played a role in the decision making process and that it had a determinative influence on the outcome of that process.'" Bergen Commercial Bank v. Sisler, 157 N.J. 188, 207, 723 A.2d 944 (1999)(citations omitted). "Although the discrimination must be intentional, an employee may attempt to prove employment discrimination by using either direct or circumstantial evidence." Id. (internal citation omitted); O'Brien v. Telcordia Technologies, Inc., 420 N.J.Super. 256, 262-63, 20 A.3d 1154 (App.Div. 2011) ("To prevail at trial, plaintiff must present either circumstantial or direct evidence of age discrimination."). Here, plaintiff asserts that he has direct evidence of age discrimination. Alternatively, plaintiff argues that he can show circumstantial evidence of age discrimination.

**1. Direct Evidence**

In order to establish a direct evidence age discrimination claim under the NJLAD, plaintiff has a "rigorous burden" to demonstrate "that age, per se, was a substantial factor in an adverse employment decision." Geltzer v. Virtua West Jersey Health Systems, 804 F.Supp.2d 241, 250 (D.N.J. 2011) (citing Bergen

---

employer, because of the ... age ... of any individual, ... discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment;

Commer. Bank v. Sisler, 157 N.J. 188, 209, 723 A.2d 944 (1999)). "The evidence produced must, if true, demonstrate not only a hostility toward members of the employee's class, but also a direct causal connection between that hostility and the challenged employment decision." Id. (emphasis removed). "Importantly, 'stray remarks in the workplace, unrelated to the decisional process, [are] not sufficiently direct evidence of discrimination to justify requiring an employer to prove that its ... decisions were based on legitimate criteria.'" Id. Direct evidence is that "which if believed, proves [the] existence of [the] fact in issue without inference or presumption." E.E.O.C. v. MCI Intern., Inc., 829 F.Supp. 1438, 1447 (D.N.J. 1993)(citations omitted).[5]

[5] In 2009, the Supreme Court declined to apply the "mixed-motive" burden-shifting analysis of Price Waterhouse for Age Discrimination in Employment Act (ADEA) claims, and held that a plaintiff must prove "by a preponderance of the evidence, that age was the 'but—for' cause of the challenged adverse employment action," such that the burden of persuasion "does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 180, 129 S.Ct. 2343, 2352, 174 L.Ed.2d 119 (2009). However, the "but-for" ADEA causation standard has not yet been adopted for direct evidence NJLAD claims. See Harth v. Daler-Rowney USA Ltd., No. 09-5332, 2012 WL 893095, *3 (D.N.J. March 15, 2012) (citing Geltzer v. Virtua W. Jersey Health Sys., 804 F. Supp. 2d 241, 250 (D.N.J. 2011)) (explaining that although the standard for analyzing claims under the ADEA has changed from the mixed-motive burden shifting analysis to a but-for causation requirement where there are allegations of direct evidence, that standard has not yet been applied to NJLAD claims); O'Brien v. Telcordia Technologies, Inc., 20 A.3d 1154, 1163 (N.J. Super. Ct. App. Div. 2011) (explaining that "we defer a decision on the thorny issue of the continued viability of the use of a Price Waterhouse mixed-motive

Plaintiff alleges that in the weeks leading up to the October 16th meeting, defendant Leonard Victor asked him about his retirement plans. Plaintiff responded that he did not want and could not afford to retire. Plaintiff alleges that Victor again asked him about his retirement plans to which he responded that he was not going to retire and liked his job. Plaintiff alleges that eight days after the second inquiry, Victor made the decision to terminate his employment.

Defendants argue that the inquires about plaintiff's retirement plans were made because over a two month period, September to October 2009, plaintiff switched out of the Victor Printing medical plan to the TD Bank medical plan, was starting to receive social security payments, and withdrew his entire 401(k) account. Defendants state that plaintiff conceded in his deposition that he understood that these events caused Victor to ask about his retirement plans.[6]

---

analysis in light of the United States Supreme Court's decision in Gross v. FBL Financial Services, Inc., 557 U.S. 167 (2009) in an age discrimination case instituted pursuant to the NJLAD"). Here, plaintiff has not brought an ADEA claim; he has only brought a claim under the NJLAD. Therefore, the Court will apply the New Jersey Supreme Court's decision in Bergen Commercial Bank v. Sisler, 157 N.J. 188, 723 A.2d 944 N.J. 1999, which follows the Price Waterhouse analytical framework. See Harth, 2012 WL 893095, *3 (finding that Gross does not apply where plaintiff only brought NJLAD claim).

[6] Plaintiff testified when he "came into see about the [401k] check, find out when I was going to get it, [Victor] asked me, 'When are you going to retire.'" Buchholz dep. 78:17-19. Plaintiff also testified, "I changed my medical over, he knew I

Under these circumstances, the two inquiries regarding plaintiff's plans to retire do not constitute direct evidence. Rather, the questions about retirement were asked in connection with other events, namely, plaintiff's receipt of social security payments, the switching of his medical plans and the withdrawal of his entire 401(k) account. Although there is some ambiguity surrounding whether plaintiff asked to withdraw the 401(k) money prior to the first inquiry, it is clear that it occurred prior to the second inquiry.[7] Further, even though Victor made the decision to terminate plaintiff, Victor has a legitimate interest in knowing if his employees are going to be leaving employment through retirement. See Glanzman v. Metropolitan Management Corp., 391

---

was starting to collect Social Security, figured I was getting ready to retire." Buchholz dep. 79:11-14.

[7] Plaintiff's testimony is less than clear regarding the timing of these events. On October 8, 2009, plaintiff filled out a form requesting to withdraw 100 percent of his 401(k) with defendants. He testified that around that time, Victor asked him the "first time" when he was going to retire. Buchholz Dep. Tr. 78:15-79:4. He also testified that he changed over his medical insurance in September 2009. Id. 79:16-18. Later plaintiff testified that Victor asked him about two weeks before he was terminated if he was going to retire. Id. 81:3-7. Plaintiff also testified that there was some "lag time" between the time he mentioned to Victor that he wanted to withdraw his 401(k) and when he filled out his paperwork. Id. at 84:21-85:6. Plaintiff could not recall how much time had passed between those two events, and could not say for sure that Victor's first remark about retirement was made before he inquired about his 401(k). Id. 85:7-15. Accordingly, in the 20 years that plaintiff worked for defendants, it was only surrounding events concerning the complete withdrawal of his 401(k) and switching of medical insurance that Victor inquired about plaintiff's retirement plans.

F.3d 506, 513 (3d Cir. 2004) (finding that the district court correctly determined plaintiff's supervisor's asking plaintiff about her retirement plans was not direct evidence of age discrimination and could just as easily be explained by a desire on the employer's part to do some long-term planning); see also Edwards v. Schlumberger-Wells Services, a Div. of Schlumberger Technology, 984 F.Supp. 264, 274 (D.N.J. 1997) ("Neither 'stray remarks' nor 'statements by nondecisionmakers, [n]or statements by decisionmakers unrelated to the decisional process itself, suffice to satisfy the plaintiff's burden in this regard.'"). Plaintiff has not shown any direct hostility on defendants' part on the basis of age. Plaintiff worked for defendants for over 20 years, and was 66 years old when he was asked about his retirement plans by Victor, who himself was 73 years old at the time.

Therefore, plaintiff has not presented direct evidence that his age was a substantial factor in his termination. See Geltzer, 804 F. Supp. 2d at 250 (concluding that remark that employee did not want a full time position because he was getting old was insufficient to support a finding that employee's age was a substantial factor in any adverse employment decisions); Fischer v. Allied Signal Corp., 974 F.Supp. 797, 804 (D.N.J. 1997) (finding that employer's comment that the sales organization would be younger and more aggressive, and needed to be younger, did not constitute direct evidence of discrimination based upon age).

**2. Circumstantial Evidence**

If a plaintiff is unable to make out a claim for age discrimination using direct evidence, he may instead rely on circumstantial evidence under the McDonnell Douglas burden-shifting analysis. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Sisler, 157 N.J. at 209-10, 723 A.2d 944; see also Smith v. City of Allentown, 589 F.3d 684, 691 (3d Cir. 2009) (finding that Gross decision which prohibits shifting the burden of persuasion to an ADEA defendant, does not forbid application of McDonnell Douglas methodology to age discrimination claims since only the burden of production, not the burden of persuasion, shifts to the employer).

Under the McDonnell Douglas three-step methodology, the employee must prove a prima facie case of discrimination, then the burden of production shifts to the employer to show a legitimate, non-discriminatory reason for its employment decision, then the burden then shifts back to the employee to prove by a preponderance of the evidence that the legitimate non-discriminatory reason articulated by the employer was not the true reason for the employment decision, but was merely a pretext for discrimination. Sisler, 157 N.J. at 210, 723 A.2d at 955.

**a. Plaintiff's Prima Facie Case**

To prove a prima facie case under the NJLAD, a plaintiff must demonstrate by a preponderance of the evidence that: "(1) he

was in a protected group; (2) he was performing his job at a level that met his employer's legitimate expectations; (3) he nevertheless was fired; and (4) the employer sought someone to perform the same work after he left." Fischer, 974 F.Supp. at 805 (citing Erickson v. Marsh & McLennan Co., 117 N.J. 539, 551, 569 A.2d 793 (1990)).

Plaintiff states that defendants do not dispute elements one, three or four; that plaintiff is a member of a protected class, that he was discharged, and that they sought someone else to perform plaintiff's job after he left. With regard to element two, plaintiff states that he worked for defendants for over 20 years, and had no problem performing his job as a driver for the four years prior to his discharge.

Defendants argue that plaintiff cannot meet element two because plaintiff failed to perform his job at a level that met defendants' expectations. Defendants argue that in the months leading up to his termination, they received two complaints about his driving, and one complaint from a customer about plaintiff's remarks to her regarding needing assistance to lift heavy boxes. Defendants also argue that plaintiff failed to report hitting a customer's truck while on a delivery.

At the prima facie stage, the Court applies an objective standard to determine whether plaintiff was "performing his job at a level that met his employer's legitimate expectations." See Zive

v. Stanley Roberts, Inc., 182 N.J. 436, 454 867 A.2d 1133 (N.J. 2005); Swider v. Ha-Lo Industries, Inc., 134 F.Supp.2d 607, 622-23 (D.N.J. 2001). "All that is necessary is that the plaintiff produce evidence showing that she was actually performing the job prior to the termination." Zive, 182 N.J. at 454; Swider, 134 F.Supp.2d at 622-23 (Plaintiff only needs to show that he had the "education and experience necessary to qualify for the position he held."). "[P]erformance markers like poor evaluations are more properly debated in the second and third stages of the burden-shifting test[;] they do not come into play as part of the second prong of the prima facie case." Zive, 182 N.J. at 455 (citing Greenberg v. Camden County Vocational & Technical Schools, 310 N.J.Super. 189, 202, 708 A.2d 460, 467 (App.Div. 1998)); Swider, 134 F.Supp.2d at 622-23 ("Subjective considerations ... are to be considered when determining whether the employer's asserted non-discriminatory reason for the termination was pretext.").

Applying an objective standard to the second prong of plaintiff's prima facie case, the Court considers only the plaintiff's evidence. Zive, 182 N.J. at 455 (plaintiff's evidence "can come from records documenting the plaintiff's longevity in the position at issue or from testimony from the plaintiff or others that she had, in fact, been working within the title from which she was terminated."). Here, although plaintiff worked for defendants for approximately four years as a driver. The facts show that

plaintiff performed his job as a driver and, therefore, plaintiff has met the second element of prima facie case. The evidence presented by defendants go to his performance as a driver and will be considered in the second and third steps under the McDonnell Douglas three-step methodology.

**b. Defendants' Non-Discriminatory Reason**

Because plaintiff has established a prima facie case of age discrimination, the age discrimination is presumed and the burden of production shifts to defendants to articulate a legitimate, non-discriminatory reason for plaintiff's termination. See McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. 1817; Sisler, 157 N.J. at 210, 723 A.2d at 955; Spinks v. Township of Clinton, 402 N.J.Super. 465, 482 955 A.2d 304 (App.Div. 2008).

Defendants state that in the months leading up to plaintiff's termination, they received two complaints concerning plaintiff's driving. The first occurred when plaintiff got out of the defendants' van to inspect the van and confronted a driver who was attempting to get in his lane and who had his son in the car. Defendants state that Victor warned plaintiff that he was driving a "billboard" for Victor Printing and that he was not pleased with plaintiff's behavior. Defendants state that plaintiff admitted that he was "driving a bulletin board around with a phone number on it" and understood that he was advertising the company on the van he was driving. The second incident occurred when plaintiff pulled

in front of a tractor trailer on the Turnpike and, in the opinion of the driver of the tractor trailer, almost caused an accident and required him "to lock his brakes." Defendants also state that they received a complaint from a customer that plaintiff had acted inappropriately by complaining to the customer that the boxes were heavy and that Victor Printing should have should have sent someone to help him. Defendants also state that plaintiff, although aware that he was required to report any damage, failed to report an accident he had with one of their client's trucks in which he broke an amber lens on the truck's mirror. Defendants state that they only learned of the accident after the client, Edmunds, called to complain.[8]

Based on the above incidents, defendants have met their burden of production by showing that these events, if true, would have justified plaintiff's termination for cause separate and apart from any alleged age discrimination. As a result, the burden shifts back to plaintiff to show that defendants' stated reason is pretext to discriminate against him. See McDonnell Douglas, 411 U.S. at 804-05, 93 S.Ct. 1817; Sisler, 157 N.J. at 210, 723 A.2d at 955.

---

[8] Although defendants raise other complaints about plaintiff's job performance, such as ripped clothing, shabby appearance, discipline for his "attitude", and the use of profanity, plaintiff either disputes these events or raises a material issue of fact as to whether he was actually terminated for this conduct.

**c. Pretext**

Because defendants provided sufficient nondiscriminatory reasons for plaintiff's termination, the burden of production shifts back to plaintiff to prove that "the articulated reason 'was merely pretext to mask the discrimination' or was not the true motivating reason for the employment decision." See Reynolds v. Palnut Co., 330 N.J.Super. 162, 748 A.2d 1216 (App.Div. 2000). "To survive summary judgment, plaintiff [is] obligated to show sufficient evidence to support an inference that the employer did not act for its stated non-discriminatory reasons." Id. "To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994). "Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them "unworthy of credence ... and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." Id. (internal citation and quotation marks omitted).

As evidence of pretext, plaintiff makes the following

arguments: 1) that defendants could not have considered the various road rage incidents and customer complaints as grounds for termination because Victor testified that he only contemplated terminating plaintiff after the accident with the Edmunds van; 2) that defendants inquired about plaintiff's retirement plans shortly before he was terminated; and 3) that defendants laid-off plaintiff and offered to rehire him only to hire someone substantially younger. Although we find the issue to be an extremely close one, we conclude that plaintiff has raised a sufficiently genuine issue of material fact on the issue of pretext to preclude summary judgment.

Plaintiff argues that defendants' proffered reason for terminating plaintiff for failure to report damage to the van or complaints about his driving and customer relations, is inconsistent, implausible and contradictory because when he was terminated he was told he was being let go for lack of work. Plaintiff argues that Victor told him that if business picked up, defendants would reinstate him for three days a week at a lower rate of pay. Although Defendants argue that plaintiff admitted that he was called into Victor's office to discuss the accident with the customer's truck, plaintiff testified that he was called into the discuss the accident and then "all of a sudden the conversation switched from that to we don't have any work for you and best thing, best thing to do is just give you a layoff."

There exists a dispute of material fact concerning the conversation that occurred at the time of plaintiff's termination. Plaintiff testified that he did not ask to be laid-off whereas Victor testified that when he informed plaintiff he had to let him go, plaintiff asked to be laid-off. There is also a dispute over whether defendants said that plaintiff could return to work. Plaintiff testified that Victor told him if work increased that he "could get three days week" at a lower rate,[9] whereas Victor denied ever telling plaintiff he could return to work at a lower rate.

On summary judgment, all reasonable inferences must be taken in the light most favorable to plaintiff. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "This standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues." Morrissey v. Luzerne County Community College, 117 Fed.Appx. 809, 811 (3d Cir. 2004) (citations omitted).

---

[9] Plaintiff states that he was replaced by a driver who was 22 years old. In a footnote, plaintiff argues that in any reduction-in-force case, summary judgment is automatically denied where there is evidence that plaintiff was actually replaced. Plaintiff, however, presented no evidence that his lay-off was part of a reduction-in-force. See Chu-Constable v. Broad U.S.A., Inc., No. A-6021-98T1, 2006 WL 3359303, at *4 (N.J.Super.A.D. Nov. 21, 2006 (outlining factors to determine whether reduction if force was undertaken as pretext for unlawful discrimination). Although defendants did lay-off eight employees in December 2008 and January 2009, plaintiff, who was 65 years old at the time, was not laid off.

Taking all inferences in plaintiff's favor, there is a dispute of material fact concerning what was said at the time plaintiff was laid-off. Simply stated, if plaintiff had been terminated for the reasons that defendants now state, why is there any ambiguity or dispute over the reason for plaintiff's termination? If plaintiff was being terminated for his driving record, why not say so, document the reason and its justification? This ambiguity raises the prospect that the stated reason - lack of work - was pretext or excuse for another prohibited reason, namely age. It is in this context that plaintiff's other proffered evidence - that he was asked about his retirement plans shortly before being laid-off, that he was told he was laid off for lack of work yet his job functions immediately taken on by other employees, and his position ultimately filled by a substantially younger person - must be viewed in the burden-shifting analysis. It should be for a jury to determine whether these facts coupled with the failure to articulate and document the proffered reason for termination, establish "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" as to prove pretext. In sum, plaintiff has proffered enough facts to support a reasonable inference that defendants did not act for its stated non-discriminatory reason.[10]

[10] It would of course be ironic if the denial of summary judgment turns on what was ultimately an act of kindness by defendants - that is, describing what was really a termination

The Court notes, however, that plaintiff has not presented a very strong case of age discrimination, only that he has offered enough factual evidence to survive summary judgment. For example, the record shows that plaintiff declined to be trained on the newer equipment even though the printing press that plaintiff was hired to operate got phased out. Rather than terminate his employment at age 63, defendants offered plaintiff a full-time job as a driver, at his then current rate of pay which was substantially higher than what a driver would have earned. Later, in late 2008, when Victor Printing's sales declined and defendants laid off eight employees, defendants did not lay-off plaintiff who was 65 years old at the time. It was only after receiving several complaints about plaintiff that defendants terminated his employment. Such facts do not present a compelling argument of discrimination based on age.

Nevertheless, whether to credit defendants' version or plaintiff's version of the discussion during plaintiff's

---

for bad driving as a lay off for lack of work motivated by a desire to benefit the plaintiff. However, as we note infra defendants' motivation and any disparity between the real reason and stated reason for the separation from employment call for credibility determinations this Court can not make on a motion for summary judgment. Ultimately, this may be a cautionary tale worth noting. If employers have a legitimate, non-discriminatory reason for termination which actually forms the basis for their motivation to terminate, there should be no hesitation to clearly state that reason to the terminated employee and any legitimately interested third party. A failure to do so may have unintended consequences.

termination as to whether defendants offered to rehire him or whether he was laid-off as a concession due to plaintiff's years of service is a credibility determination which the Court cannot make on summary judgment. See Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004).

**IV. CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment will be denied. An appropriate Order will be entered.

Date: June 29, 2012

s/Noel L. Hillman
NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey